HELEN SVOBODA, APPELLEE, V. SNYDER STATE BANK, APPELLANT.

FILED JULY 6, 1928. No. 26488.

*C. M. Skiles* and *I. D. Beynon,* for appellant.

*Courtright, Sidner, Lee & Gunderson, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and HOWELL, JJ., and CHASE and REDICK, District Judges.

REDICK, District Judge.

This is an action brought by the plaintiff against the Snyder State Bank of Snyder, Nebraska, to recover upon a certificate of deposit issued by said bank on April 29, 1926, for $500, due in 12 months thereafter, with interest at 4 per cent. per annum, no interest after maturity. The certificate became due April 29, 1927, and was presented for payment and payment refused; whereupon this suit was brought September 1, 1927. The bank appeared by the guaranty fund commission of the state of Nebraska and moved to dismiss the case upon the ground that the action was one against the state of Nebraska, and that the assets of said bank are in possession of the guaranty fund commission. The motion was overruled and an answer presenting substantially the same matter as defense was filed for the bank by the guaranty fund commission. Thereafter plaintiff filed a motion for judgment on the pleadings, which was sustained and judgment rendered for plaintiff in the sum of $547 and costs. The defendant appeals, making seven assignments of error, all of which may be included in the fourth assignment, that the judgment is contrary to law.

No defense was presented to the merits of plaintiff's claim, and the sole question for determination is whether or not the action is in effect one against the state of Nebraska which cannot be maintained without the consent of the state.

It appears from the record that on March 20, 1925, the department of trade and commerce took possession of the bank and all its assets, and turned the same over to the guaranty fund commission of the state for administration and management, under section 8029, Comp. St. 1922, as amended by section 11, ch. 191, Laws 1923, as amended by section 1, ch. 30, Laws 1925. This last act provided: The department of trade and commerce "may forthwith take possession of the property and business of such bank, and place it in charge of the guaranty fund commission, who shall thereafter conduct the affairs of said bank, and who shall retain possession of all money, rights, credits, assets and property of every description belonging to such bank, as against any mesne or final process issued by any court against such bank or corporation whose property has been taken, and may retain such possession for a sufficient time to make an examination of its affairs, and dispose thereof as provided by law. Any attachment lien against such property, acquired within thirty days next preceding the taking of such possession, shall be thereby released and dissolved."

Section 4 of the act of 1925 is as follows: "Upon taking possession of the property and business of any bank, the guaranty fund commission may take charge and control of the property and business of such bank and open it and manage it as a going concern, without regard to its solvency, and through employees perform all duties and acts of the officers and directors of such bank while managing the same, and all salaries and expenses in connection therewith shall be paid by the bank. The operation of the bank by the guaranty fund commission shall in no manner relieve or diminish the obligations of the stockholders under the laws of this state, or in any manner absolve the owners of such stock or the officers or directors of any liability under the civil or criminal laws of the state. If the guaranty fund commission shall determine that it is impossible to preserve such institution as a going concern, then the commission shall proceed to liquidate such

bank as by law provided: Provided, the district court of the district in which such bank is located may, upon application of any judgment creditor after a period of three months from the taking over of said bank by the guaranty fund commission, order the commission to close said bank, and liquidate the same, as provided by law."

When the guaranty fund commission took possession of defendant bank, March 20, 1925, in pursuance of the authority granted by section 4, above quoted, it opened the bank for business, received deposits, paid checks, and conducted the bank as a going concern from that time forward, and managed the same in substitution for the regular officers of the bank. On April 29, 1926, it received from plaintiff the sum of $500 on deposit, and issued its certificate as above stated. No receiver has ever been applied for or appointed to take charge of the assets of the bank and liquidate its affairs. The guaranty fund commission continues to operate it as a going concern in the hope and expectation that it will be able to get the affairs of the bank in such condition that they may turn the same over to its stockholders and directors and thus enable them to continue the business of the bank under the supervision of the state in the same manner as such business was conducted prior to the intervention of the department of trade and commerce. If, after having taken possession, at any time the guaranty fund commission shall determine that it is impossible to preserve such institution as a going concern, then it is required to notify such fact to the attorney general, whose duty it is to apply to the courts for the appointment of a receiver of the bank for the purpose of liquidating its assets and winding up its business. Laws 1925, ch. 30, sec. 5.

A relevant question is: What is the status of the bank during the period for which its business is conducted by the guaranty fund commission as a going concern? Is it dead, dormant, or a living banking institution having all the privileges and subject to all the liabilities of such a concern? The corporation is not dead, because the hold-

ing is practically universal that, though insolvent and in the hands of a receiver, the corporate entity is not destroyed. 14A C. J. 977, sec. 3217. And the mere taking over of possession by the guaranty fund commission is much less effective than the appointment of a receiver, because the commission has no power to liquidate its assets—that has to be accomplished by the appointment of a receiver to whom the commission is required to deliver. It is not dormant, because the corporation still maintains its entity, with all its powers except the management and control of its property, and except, of course, the power to do any act which would interfere with the possession of the receiver, or the commission in the performance of duties enjoined by law. It may hold corporate meetings, elect officers, appoint committees, and perform other acts for the benefit of the corporation, within the limits above noted.

We are driven to the conclusion that, notwithstanding the intervention of the guaranty fund commission, the corporation continues to be a living concern for the transaction of the business of banking. The commission is an agent appointed by the state to take charge of and manage the business of the defendant corporation. But the state has no pecuniary interest in that business. If the bank finally succeeds and makes a profit, the state can claim no part thereof; if it fails, there is no liability upon the state to pay any portion of its losses. The judgment herein is to be paid out of the assets of the bank, not by the state.

It seems, therefore, that, although the commission is appointed by the state and answerable to the state for the faithful performance of its duties, it is in truth and in fact the agent of the corporation, taking the place of its officers and directors as manager of its business. Whether or not the guaranty fund commission, as such, may be sued in respect of the business by it conducted, we need not and do not decide. The suit here is against the corporation. If during the conduct of the business of the

bank it became necessary to sue one of its debtors, no doubt the action would have to be brought by the commission, but it would be brought in the name of the corporation. On the other hand, a suit against the corporation could hardly be brought by the commission, unless perhaps for recovery of its assets, or protection of its right of possession.

If we are right upon the proposition that the corporation still exists as a legal entity, then it has a right to sue and be sued the same as though its affairs were being managed by its officers and directors, with this exception, that, inasmuch as the right to the possession of its assets is declared by law to be in the commission, the right of the corporation as such to sue therefor is suspended. The liability of a corporation upon its contracts stands upon a different basis, and we see no objection to the maintenance of a suit of that character for the purpose of determining the rights of the parties, so long as it is not sought to take away or subject any of the assets of the corporation, or to interfere with the possession thereof by the commission. There is no provision in the statute for filing claims against the bank until after the appointment of a receiver. If suits for adjudication of claims due may not be brought, and the commission sees fit to conduct the bank as a going concern for the period of limitations, action upon claims might be barred.

The judgment in the present case has no tendency to do either of the above things. An execution thereon could not be levied upon the property of the bank in possession or under the control of the commission, and if it operated as a lien upon the real estate of the corporation, it would be subject to the final disposition of the bank's assets by the commission, during the time it is in possession under the statute.

It is argued by defendant that the object of this suit is to gain an advantage over other depositors and preferred creditors of the bank by obtaining a judgment drawing 7 per cent. interest for a longer period of time

than may be obtained by other preferred creditors whose claims are not in judgment. Whether or not, if the bank should finally fail and be liquidated, the claim of the plaintiff against the depositors' guaranty fund would be upon his certificate of deposit or upon his judgment, we need not decide. In the opinion of the writer, any excess in amount of the judgment over the amount properly allowable on the certificate of deposit would not be a charge upon the guaranty fund, but might be allowed as a general claim against the bank. But we have not reached this situation. If the bank is finally turned over to its stockholders, it is perfectly just and right that the plaintiff receive the amount of his claim with 7 per cent. interest from the time it became due. That is no concern of the state or the guaranty fund.

We have above set forth what we consider to be the common sense view of the situation presented by this record, but counsel on both sides, in the preparation of their briefs, have exhibited commendable industry in citing a large number of cases for the assistance of the court, and we have examined many of them and have been guided by them to a considerable extent in arriving at the conclusions set forth in the earlier part of this opinion. We will now refer to some of them which we think applicable to the question before us. The case of the *Metropolitan Savings Bank & Trust Co. v. Farmers State Bank*, 20 Fed. (2d) 775, is almost precisely the same as the instant case on its facts. The action was brought in the district court of the United States for the district of Nebraska, upon a certificate of deposit for $5,000, issued by the Farmers State Bank July 12, 1924, prior to the bank being taken over by the guaranty fund commission of the state of Nebraska (this being the only point of difference), which event occurred April, 1925, at which time, and since, the bank was being operated by the commission as a going concern. Motion to dismiss the action as being one in effect against the state was sustained by Woodrough, J., and appeal taken to the circuit court of appeals, where

it was reversed and remanded, with direction to proceed in the usual course. In an exhaustive and well-written opinion by Molyneaux, D. J., the precise question before us was discussed and decided adversely to the claim of the commission. We will not take the space necessary to analyze that decision, but will only say that in our judgment it is well reasoned and correctly interprets the statutes of this state, which are set out quite fully. The gist of the court's holding is set out in syllabus 3, as follows:

"Corporate existence of corporation is not affected by the appointment of a receiver of its property, and corporation remains subject to actions at law to the same extent as if no receiver had been appointed, except as such actions may be restrained or enjoined in receivership proceedings, and no action can be maintained in any way affecting or embarrassing receiver in the possession of the property of the corporation to which his receivership entitles him."

We quote the following from the opinion:

"The mere fact that an agency of the state is, under the law of the state, placed temporarily in management of the bank in the place of the bank's officers, does not constitute the banking corporation an arm or agency of the state, or entitle it to claim immunity from suit on the theory that it is identical with the state. The action is against the corporation; neither the state nor any department of the state are made a party; nor were they necessary parties, nor proper parties, to the action. The judgment to be rendered in the suit is to be satisfied out of the property of the corporation. The suit is not directly or indirectly an action against the state"—citing authorities.

It is true, as suggested by counsel for defendant, the decisions of the federal courts are not conclusive as binding precedents upon the state courts in the interpretation of state statutes, but the decisions of the United States circuit courts of appeals are entitled to very great

respect and are of great weight as authorities when their reasoning meets with our approval.

The cases cited in support of the conclusion in the *Farmers State Bank* case present a wide range of circumstances upon which the question arose, but in most of them the pivotal question was whether or not the state in its governmental capacity had an interest in the subject-matter of the suit; as was held in *Coal & Coke R. Co. v. Conley & Avis,* 67 W. Va. 129, the interest of the state in the subject-matter of a suit to which it is not a party must be direct, not merely incidental and consequential. As we have attempted to show, the state has no interest in the present action, which involves merely the liability of the bank to its depositor.

The defendant relies upon five cases in which it is held that a suit against a governmental agency is in effect a suit against the state, and cannot be maintained without the state's consent. We think none of these cases are applicable to the present action and are easily distinguishable therefrom. We will examine them briefly. The case of *State v. Mortensen,* 69 Neb. 376, was an action against the members of the board of public lands and buildings in their official capacity to compel the specific performance of a contract to furnish plaintiff a number of convicts to perform labor in plaintiff's factory, and the court held that such a contract was in substance one with the state, and that the court had no jurisdiction. The case of *Lankford v. Schroeder,* 47 Okla. 279, was a suit against the bank commissioner to compel him to pay a debt against a failed bank out of the state guaranty fund, or out of assets of such bank in his hands as such officer. It was held, in effect, a suit against the state. The case of *Lovett v. Lankford,* 47 Okla. 12, was a suit in mandamus to compel the defendants, as members of the banking board, to pay the claim of plaintiff out of the depositors' guaranty fund. It was held to be a suit in effect against the state, and that the discretion of the banking board could not be controlled by mandamus. The case of *Lankford v.*

440

*Platte Iron Works Co.,* 235 U. S. 461, another case from Oklahoma, was a suit by a depositor in the bank to compel payments from, distribution of, and assessments for the depositors' guaranty fund. It was held, in view of the rulings of the Oklahoma courts that the statute creating the state banking board intended to give the state a definite title to the depositors' guaranty fund, that the suit was one against the state.

If the present action had been brought against the guaranty fund commission, or sought in any way to control the action of the commission with respect to the assets of the bank in its hands, or the distribution of the depositors' guaranty fund, the above cases would have a direct application; but the suit, being one against the banking corporation, cannot affect in any way the administration and distribution of the assets of the bank or the guaranty fund.

The fifth case is *Hertz v. Knudson,* 6 Fed. (2d) 812, which was an action brought by the department of trade and commerce against Hertz and Levine to recover assets in their hands belonging to the Lyon Bonding & Surety Company, an insolvent insurance company in the hands of the department for liquidation. It was held that the suit was one by the state, of which the federal court had no jurisdiction. It will be readily noted that that action was brought by a department of the state, which clearly distinguishes it from the one at bar.

Our conclusion is that the judgment of the district court should be affirmed.

AFFIRMED.