WILLIAM MORTON V. STATE OF NEBRASKA.

FILED JANUARY 16, 1931. No. 27519.

*F. J. Reed,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *L. Ross Newkirk, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

DEAN, J.

William Morton, defendant, was informed against October 17, 1929, in Scotts Bluff county, and there charged with the embezzlement, on or about April 1, 1928, of $2,107.20 alleged to be the money of Nellie Crounse Shrewsbury, Thomas Sanderson, and the Mitchell State Bank. The jury found the defendant guilty and the court thereupon sentenced him to serve a term of from one to ten years in the penitentiary. The defendant has appealed.

The Mitchell State Bank, a corporation, was engaged in the banking business several years before the present banking laws of Nebraska were adopted. January 9, 1928, the bank then being in failing curcumstances, was taken over by the guaranty fund commission and operated as a going concern until April 30, 1929, when, being unable to meet its obligations, the doors of the bank were closed and a receiver was appointed May 31, 1929, to take charge of its affairs.

For almost ten years preceding January 9, 1928, Morton was the assistant cashier of the Mitchell State Bank; and A. E. Torgenson was appointed special agent by the guaranty fund commission to assume charge of the bank while it was being operated by the commission and, while acting in this capacity, he retained the services of Morton to assist him in the conduct of the bank's affairs. Subsequently Morton was employed as a bank clerk and assistant

and was apparently its active manager under Torgenson's supervision. Torgenson, however, appears to have made only occasional visits to the bank during the above period. The evidence tends to prove that, during all of the time here in question, there was no change in the locks nor in the combination of the vault. And it also appears that Morton had free access to the bank and the bank vault and was familiar with both.

In 1920 Norman Crounse, a bank patron, deposited $3,000 in the bank, but this money was reduced by withdrawals from time to time until but $2,000 remained in the Crounse account. The bank continuously paid the annual interest on the deposit and all of the transactions in respect of the withdrawals and interest payments were taken care of by the defendant Morton. Norman Crounse died in 1921 and his heirs, namely, Ola Crounse and Nellie Crounse Shrewsbury, took charge of the estate, including, of course, the remaining depository rights of Crounse in the Mitchell State Bank.

Torgenson testified that, with the exception of a deposit slip dated in 1920, there was no record of a Crounse account in the bank, and that when the bank was taken over an inventory of the deposits was made in Morton's presence, but that he did not mention the Crounse account. Torgenson further testified that Ola Crounse inquired about a dividend payment that she said was due her, but that, after searching the record, he found no trace of an account other than that $3,000 had been originally deposited in the bank. And in respect of another account, namely, the Sanderson account, Torgenson testified that he found no record of such account when inquiry was made in respect of the dividend payment thereon.

There is a letter in the record, dated March 9, 1927, which tends to prove that Morton was aware of the Crounse account in the bank. In the letter Morton stated that he was inclosing a check for $700 requested by Nellie Crounse, with accrued interest, and that there remained a balance of $2,000 in the bank.

Immediately upon learning that the bank was closed, Ola Crounse went to the Mitchell bank and inquired of Mr. Torgenson in respect of the condition of their bank account. But it appears that no record of a Crounse account could be found in the bank. She testified that she first talked with defendant Morton at the office of his counsel, and that Morton asked her to go to Mitchell and look up the status of the Crounse account. She also testified that Morton called on her at her sister's home at Alliance to make a settlement, and that he wanted her to accept his note, dated September 1, 1927, in payment thereof. Her evidence is corroborated by that of county attorney P. E. Romig, whose advice was sought when defendant Morton proposed that she accept his note in payment of the money involved herein. Romig testified that Morton informed him that he had prepared an ante-dated note that represented the amount of money which was in the bank account of Ola and Nellie Crounse, and that "he had to have this note in order to protect himself from a fellow named Jones, and that 'Jones was hot on his trail,' those are the words he used."

Morton testified that, while he was searching for some papers in an unrented safety deposit box in the vault, he found a package of currency in the deposit box in which there was $2,000 in bills. But he told no one about finding the currency and was unable to find any record that would tend to identify the person to whose account it belonged. He testified that he issued a draft to Ola Crounse for $380 from money taken out of the deposit box, and that he also offered her the balance of the money belonging to her deposit, and that he at the same time told her that her account had somehow been "segregated" and that he wanted to straighten it out for her. On the cross-examination, Morton testified that he had received positive instructions from the guaranty fund commission that no money was to be paid on old or stale deposits, under any circumstances. But he testified that he did not think he was violating any instructions, for the reason that the Crounse account did not appear as a deposit on the books. In offering Ola

Crounse a note in payment of her deposit, Morton testified that what he "had in mind was something that would give me (Morton) a receipt and at the same time something that she (Ola Crounse) would be able to explain if she were called on at any time."

Defendant contends that the state failed to prove fiduciary capacity between himself and the bank, and that he was employed by the guaranty fund commission and not the bank. He also contends that the Mitchell State Bank ceased to function as a bank on January 9, 1928, and that his relationship with the bank terminated at that time and that he was employed thereafter solely by the guaranty fund commission. In respect of the dissolution of a bank by being taken over by the guaranty fund commission, we have held to this proposition, namely: "The taking over of the assets of a banking corporation by the department of trade and commerce of this state for the purpose of managing or liquidating such bank does not effect a dissolution of the corporation." *Svoboda v. Snyder State Bank*, 117 Neb. 431.

Clearly, the defendant's position is not tenable. The bank was conducted as a going concern for some time after it was taken over by the guaranty fund commission, and while the bank was controlled by the commission Morton retained his position through his connection with the Mitchell State Bank. To every purposeful intent he was an agent of the bank, and the fiduciary capacity, or relationship, between Morton and the bank was thereby established.

The defendant also contends that the verdict is not supported by sufficient evidence, and that if he is guilty of any offense it is that of concealment of the funds of the bank. But we think there is sufficient evidence tending to prove that the defendant wilfully embezzled the money within the meaning of section 8047, Comp. St. 1922. As pointed out in the record, Morton handled a large part or nearly all of the transactions between the Crounses and the bank, and at no time, even after the finding of a considerable amount of currency in an unrented safety deposit box, did he inform his supervisor in respect of the money so found, nor of

the status of the Crounse account. And the defendant's willingness to give his note in settlement of the amount that was originally a part of the Crounse account that came into his hands justified the jury in its finding that defendant was guilty.

The defendant also complains that the court did not instruct the jury that, to constitute the crime of embezzlement, the adverse use or holding of the property embezzled must be felonious. But we think that the mere absence of the word "felonious" does not constitute reversible error. The jury were instructed that, if they found defendant guilty, they must find that he intended to injure or to defraud the bank and Nellie Crounse Shrewsbury and Thomas Sanderson, and that the embezzlement was committed with wilful intention.

The defendant introduced the evidence of witnesses as to his good character. But, on the cross-examination, the witnesses were interrogated as to the defendant's reputation as an alleged gambler. The defendant contends that the questions so propounded prejudiced the minds of the jury against him. But the rule has been announced that a witness may be interrogated on the cross-examination for the purpose of testing the credibility and accuracy of his evidence as to the reputation of an accused. 5 Jones, Commentaries on Evidence (2d ed.) secs. 2345, 2346.

Finding no reversible error, the judgment is

AFFIRMED.