MORRILL COUNTY, APPELLANT, v. CLARENCE G. BLISS ET AL., APPELLEES.

FILED JUNE 16, 1933. No. 28711.

*R. O. Canaday, William Ritchie* and *C. G. Perry,* for appellant.

*Montgomery, Hall & Young, Kennedy, Holland & De Lacy, I. D. Beynon, Perry, Van Pelt & Marti, Skiles & Skiles, Neighbors & Coulter, Butler & James, Gaines, McGilton & Gaines* and *Sloans, Keenan & Corbitt, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This is a suit for an accounting brought by Morrill county as a depositor of the Bridgeport bank, on its own behalf and on behalf of all other depositors similarly situated, against the members and agents of the guaranty fund commission of the state of Nebraska. The guaranty fund commission took possession of the assets and business of the Bridgeport bank on the 15th day of May, 1925, and ran it as a going concern until the 8th of September, 1927, during which period new deposits were solicited and accepted, new loans were made, the bank's paper was discounted, deposits were withdrawn, and all the functions of a bank were performed. It is alleged by the plaintiff that, while the bank was so operated, a large amount of deposits were withdrawn, creating an unlawful preference between depositors, the amount of which is unknown to plaintiff and only ascertainable by an accounting. The plaintiff further alleges that, during this period of operation by the guaranty fund commission, certain set-offs were permitted, and moneys, which were in fact loans and therefore general claims, were withdrawn, and that the bank was, in fact, unlawfully liquidated while unlawfully operated as a going concern.

The gist of the action pleaded by plaintiff is summarized in the petition as follows: "That by reason of the

foregoing facts the assets of said bank placed in charge of the defendants who were members, officers and agents of the guaranty fund commission * * * have become exhausted and depleted in a sum in excess of $300,000, which sum, had said assets been properly conserved and legally administered, would have been available to the discharge of the indebtedness of said bank to this plaintiff and all other depositors and creditors similarly situated." The trial court found in favor of defendants and entered a decree in conformity to its finding, from which plaintiff appeals.

This is the second appeal filed in this case. The first appeal was taken from a decree entered February 9, 1932, and a motion for new trial, filed within three days, was overruled May 9, 1932. Defendants filed motion to dismiss this appeal for that no cost bond had been filed and no cash deposit to cover costs or supersedeas bond had been filed as required by section 20-1914, Comp. St. 1929. It appearing from the transcript that no cost bond had been filed within 90 days from the final order, as provided by statute, in conformity to the rule announced by this court in *Greb v. Hansen*, 123 Neb. 426, the former appeal was dismissed September 26, 1932, for lack of jurisdiction.

On August 29, 1932, during the May, 1932, term of court, the trial judge in Morrill county, not at the county seat but at Bayard, set aside the order of May 9, 1932, overruling motion for new trial, and the motion was again submitted to him and overruled. Later, on September 14, 1932, the court at Bridgeport, the county seat of Morrill county, again set aside the order of May 9, 1932, overruling the motion for new trial and, on reconsideration, the motion was again overruled. Thereafter, on September 26, 1932, the plaintiff's attorneys claim they learned for the first time that the decree of February 9, 1932, had been signed by the trial judge at chambers in Gering, Scotts Bluff county, and was sent to the clerk of

the district court at Bridgeport, who entered it on the journal, showing that it had been signed by the judge at chambers at Gering, Nebraska. At that time plaintiff filed a motion that the decree of February 9, 1932, be held to be void and be set aside on the sole ground that the decree was signed by the trial judge at chambers in Gering, Nebraska, instead of in open court at Bridgeport, Nebraska, and that the motion for new trial be withdrawn and all orders relative thereto be expunged from the record. Upon October 8, 1932, a regular day of the May term, the court sustained the motion and reentered the same decree, and overruled plaintiff's motion for new trial, filed the same day. This appeal was taken from the decree and order overruling motion for new trial entered October 8, 1932.

The appellees, except Bliss, filed a motion in this court to dismiss this second appeal for that the transcript was not filed in this court within three months from the rendition of a final judgment; that it is an appeal from a judgment entered October 8, 1932, which decree is identical with one dated February 9, 1932, except the date, from which an appeal was dismissed; and that the reentry of the judgment on October 8, 1932, was for the sole purpose of extending the statutory time for perfecting an appeal to this court. This motion to dismiss the appeal was argued before this court and ruling thereon reserved until the case was submitted upon the merits. It demands our consideration first. As heretofore noted, the original decree in this case was signed by the trial judge at chambers at Gering, Scotts Bluff county, and transmitted to the clerk of the district court for Morrill county. Did this render the decree void?

The judges of the various district courts, as such, have no inherent authority at chambers except such as they are expressly given by law. The Constitution provides: "The several judges of the courts of record shall have such jurisdiction at chambers as may be provided by law." Const. art. V, sec. 23.

By section 27-317, Comp. St. 1929, the legislature has conferred certain powers upon district judges at chambers, which section however did not authorize the act of the trial judge in signing the decree in this case. However, section 8-191, Comp. St. 1929, specifically provides that, in such a case as this, a judge of the district court at chambers shall have jurisdiction to perform certain judicial acts. This is a suit for an accounting brought by the plaintiff on behalf of himself and all depositors of the defunct Bridgeport bank to recover alleged losses of the bank while run by the guaranty fund commission. This money, if recovered, would have to be distributed among the depositors of said bank. The receiver is a party to this action. It involves the administration of this bank from the time when it was discovered to be insolvent, and, as such, it comes within the statute. Section 8-191, Comp. St. 1929, provides as follows: "In any proceeding in connection with the insolvency, liquidation or reorganization of a bank, a judge of the district court shall have jurisdiction in any county in the judicial district for which he was elected to perform any official act in the manner and with the same effect as he might in the county in which the matter arose, or to which it may have been transferred, and he may perform any such act in chambers with the same effect as in open court." In this connection, see *State v. Neligh State Bank,* 116 Neb. 858. This suit is a proceeding in connection with the insolvency, liquidation, or reorganization of a bank, and, as such, jurisdiction was conferred by the statute upon the district judge at chambers to perform official acts in the manner and with the same effect he might in the county in which it arose.

But the appellant argues if the legislature by the enactment of section 8-191, Comp. St. 1929, intended to amend section 27-317, Comp. St. 1929, then such enactment would be unconstitutional, because the title of the act was not broad enough to include such an amendment. How-

ever, section 8-191, Comp. St. 1929, is not amendatory of section 27-317, Comp. St. 1929, but an independent act which confers a jurisdiction upon judges of district courts at chambers in addition to others under the constitutional provision heretofore quoted. This court has definitely passed upon this question. What now appears as section 20-1531, Comp. St. 1929, relating to the confirmation of a judicial sale, was amended in 1875 by adding a proviso that the judge of the district court might confirm a mortgage foreclosure sale under certain conditions at vacation. Laws 1875, p. 38. In 1885 this court was required to decide whether this statute authorizing the confirmation of sales in vacation was repealed by the passage of what is now section 27-317, Comp. St. 1929, without later amendments, which took effect March 1, 1879. The argument of Judge Maxwell so aptly meets the contention of the appellant that we quote it with the omission of supporting authorities.

"It is evident, however, that there is no repugnancy between the several provisions. A statute will not be repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable. * * * In this case, there is no repugnancy between the statutes, and the earlier one is not repealed by the later." *Lawson v. Gibson,* 18 Neb. 137. To the same effect is *Beatrice Paper Co. v. Beloit Iron Works,* 46 Neb. 900. Applying the rule to this case and paraphrasing the language, section 8-191, Comp. St. 1929, does not amend section 27-317, Comp. St. 1929, by implication or otherwise, because the provisions are not repugnant, and they must be construed together. Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together. *State v. Omaha Elevator Co.,* 75 Neb. 637; 25 R. C. L. 1067, sec. 292. 2 Lewis' Sutherland, Statutory Construction, 844, gives the rule: "Statutes which are not inconsistent with one another, and which relate to the same subject-matter,

are *in pari materia*, and should be construed together; and effect should be given to them all, although they contain no reference to one another, and were passed at different times. Acts *in pari materia* should be construed together and so as to harmonize and give effect to their various provisions." *Rohrer v. Hastings Brewing Co.*, 83 Neb. 111; *Board of Commissioners v. Aetna Life Ins. Co.*, 90 Fed. 222; *State v. Gerhardt*, 145 Ind. 439; *Scarangello v. Pacione*, 126 N. Y. Supp. 714; *Village of North Fargo v. City of Fargo*, 49 N. Dak. 597. A statute will not be construed as repealing by implication an earlier statute, unless there is a plain and unavoidable repugnance. In *State v. Omaha Elevator Co.*, 75 Neb. 637, we held: "All statutes upon the same general subject are to be regarded as part of one system, and later statutes are to be considered as supplementary or complementary to those preceding them on the same subject." Section 8-191, Comp. St. 1929, is an independent act and deals with the same general subject as section 27-317, Comp. St. 1929, and is not amendatory but supplementary and complementary to it.

It therefore follows that, since the trial judge was authorized by statute to sign the decree in the case at bar at chambers, said decree entered February 9, 1932, was a valid one. Now, the vacation of the decree on October 8, 1932, was solely on the ground that, since it was rendered and signed at chambers, it was null and void. A valid judgment can only be vacated after the term it was rendered on the application of plaintiff after it is adjudged that there is a valid cause of action. Comp. St. 1929, sec. 20-2005. It is not sufficient that the petition state a cause, as contended by appellant, but applicant must allege and prove a valid cause of action. *Bond v. Wycoff*, 42 Neb. 214. And in *Gilbert v. Marrow*, 54 Neb. 77, it was held: "A party who seeks the vacation of a judgment after the term at which it was rendered must allege and prove that he has a valid cause of action or defense, and

to entitle him to relief the court must adjudge that such cause of action or defense is *prima facie* valid." But there was no such adjudication in this case. The trial court erroneously found the decree null and void for that it was signed at chambers in another county. It was after the term at which it was rendered. The same judgment was forthwith, without further testimony, immediately reentered, the same decree with the exception that the date was changed.

It is obvious from the history of this case that the purpose in vacating the original decree and reentering the same decree was to extend the time for perfecting an appeal. The legislature has general power to fix the time limit for taking an appeal, and having prescribed such time, the trial court has no power to extend the time directly or indirectly.

In 2 R. C. L. 104, sec. 80, it is said: "The legislature has general power to prescribe the time within which writs of error may be sued out or appeals taken, and it is essential to the jurisdiction of the appellate court that the proceeding be taken within the time limited, and the trial court has no inherent power to extend the time, either directly or indirectly. Thus, where an appeal has not been taken within the required time, the court has no power indirectly to extend the time for appealing by vacating, for such purpose, the judgment, order or decree, and entering it as of a later date."

In 3 C. J. 1070, it is said: "An extension of time cannot be made indirectly by repeating the judgment, order, or decree, by an amendment or modification not changing its legal effect, by a motion to vacate the same, *by vacating and reentering or refiling it as of a more recent date.*" (Italics ours.)

In *Chicago & N. W. R. Co. v. Big Bend Drainage District,* 208 Pac. 872 (29 Wyo. 50) it was held: "An attempt of the court to reinvest a right of appeal that has been lost by lapse of the time allowed by Comp. St. 1920,

sec. 6402, by vacating the order appealed from and re-entering it under a later date is improper, and the appeal will be dismissed; there being no claim of fraud or mistake in the original entry of the order."

In *Philbrock v. Home Drilling Co.*, 117 Okla. 266, it was held: "The trial court cannot extend time for appeal by vacating the order or decree, and reentering it as of a more recent date."

In *Credit Co. v. Arkansas Central R. Co.*, 128 U. S. 258, it was said: "The attempt made, in this case, to anticipate the actual time of presenting and filing the appeal, by entering an order *nunc pro tunc*, does not help the case. When the time for taking an appeal has expired, it cannot be arrested or called back by a simple order of court. If it could be, the law which limits the time within which an appeal can be taken would be a dead letter."

The statutes of Nebraska prescribe the time within which an appeal may be taken to this court, and it is essential to the jurisdiction that the appeal be prosecuted within the time limit (Comp. St. 1929, sec. 20-1912), by filing a transcript within three months (*Frazier v. Alexander*, 111 Neb. 294), which shall contain a certificate that a cost bond has been given (Comp. St. 1929, sec. 20-1914; *Greb v. Hansen*, 123 Neb. 426). And the trial court has no power to extend the time either directly or indirectly. In such a case, where an appeal has not been taken in time, or where a cost bond has not been filed within time, the court has no power indirectly to extend the time for appeal by vacating after term, for such purpose, a valid judgment, and reentering it as of a later date. Since this represents an unwarranted effort to extend the time of appeal from the judgment of February 9, 1932, the appeal is dismissed.

Since all the appellees did not join in the motion to dismiss, a brief discussion of the merits of plaintiff's contention will be proper. The defendant Bliss was, during a part of the time involved in this case, secretary of the

department of trade and commerce of the state of Nebraska, and, as such, an *ex officio* member of the guaranty fund commission. The other defendants were either members of the commission or its agents. The defendants were public officers of the state of Nebraska or their employees. The state has control, supervision and inspection of all state banks. The guaranty fund commission was in charge of the Bridgeport bank under the provisions of the law as public officers. The cases cited by the appellant do not negative this proposition. The commission was created by law and appointments to it were made by the governor with the consent of the senate. They were required to take the oath required of county officers, give bond for faithful performance of the duties, and an assessment was levied upon state banks under the police power to pay the expenses and compensation of the commission. We have held that suits against the bank while in charge of the commission were not suits against the state. In an opinion by Redick, District Judge, we said: "The commission is an agent appointed by the state to take charge of and manage the business of the defendant corporation." *Svoboda v. Snyder State Bank,* 117 Neb. 431. "The department of trade and commerce and the guaranty fund commission were created by statute as governmental agencies of the state and as trustees for the beneficial owners of trust funds coming into the custody of such agencies." *Bliss v. Continental Nat. Bank,* 120 Neb. 568. Some decisions have referred to the state banking department as trustee of a trust fund. There is nothing inconsistent with a public official and a trustee. But in the case of the guaranty fund commission we had public officials exercising the control of the state over the quasi public business of banking.

The authority by which the defendants took possession of the Bridgeport state bank and operated it was conferred upon them as members of the guaranty fund commission by section 1, ch. 30, Laws 1925: "Whenever it

shall appear to the department of trade and commerce, from any examination or report provided for by this article, that the capital of any corporation transacting a banking business under this article is impaired, * * * such department may forthwith take possession of the property and business of such bank, and place it in charge of the guaranty fund commission, who shall thereafter conduct the affairs of said bank, and who shall retain possession of all money, rights, credits, assets and property of every description belonging to such bank, as against any mesne or final process issued by any court against such bank or corporation whose property has been taken, and may retain such possession for a sufficient time to make an examination of its affairs, and dispose thereof as provided by law. Any attachment lien against such property, acquired within thirty days next preceding the taking of such possession, shall be thereby released and dissolved." This statute was construed in *Metropolitan Savings Bank & Trust Co. v. Farmers State Bank,* 20 Fed. (2d) 775, wherein it was held the commission was required to determine within a reasonable time whether to operate bank as "going concern" under section 4, ch. 30, Laws 1925, or to liquidate it through section 5 of the same law. In its determination of the future fate of a bank, the commission exercised its discretion and judgment. Quoting from the opinion of *Metropolitan Savings Bank & Trust Co. v. Farmers State Bank,* 20 Fed. (2d) 775: "In our view, the plain meaning of this provision is that, when the commission first takes charge and possession of a bank, it is merely preliminary, for the purpose of making an examination and 'disposing of the bank as provided by law,' which means that the commission must, within a reasonable time, make its choice whether to operate it 'as a going concern' or to liquidate it through a receivership. During this preliminary phase, while determining which course to adopt, the commission is empowered to hold possession of the money and property of

the bank, 'as against any mesne or final process issued by any court.' "

The commission was directed in its duties by statute. Section 4, ch. 30, Laws 1925, provides: "Upon taking possession of the property and business of any bank, the guaranty fund commission may take charge and control of the property and business of such bank and open and manage it as a going concern, without regard to its solvency, and through employees, perform all duties and acts of the officers and directors of such bank while managing the same, and all salaries * * * in connection therewith shall be paid by the bank. The operation of the bank by the guaranty fund commission shall in no manner relieve or diminish the obligations of the stockholders under the laws of this state, or in any manner absolve the owners of such stock or the officers or directors of any liability under the civil or criminal laws of the state. If the guaranty fund commission shall determine that it is impossible to preserve such institution as a going concern, then the commission shall proceed to liquidate such bank as by law provided: Provided, the district court of the district in which such bank is located, may, upon application of any judgment creditor after a period of three months from the taking over of said bank by the guaranty fund commission, order the commission to close said bank, and liquidate the same as provided by law."

In the last cited opinion, it was said: "The status of the banking corporation while being operated by the commission as a 'going concern' differs completely from the status of a bank in receivership. In the latter case the bank is in process of liquidation, either by judicial action or by virtue of statutory authority. In the former case the bank continues in business as usual, receiving deposits, paying checks drawn against it, making new loans, renewing old ones, assuming new liabilities, discharging old ones and in every way carrying on its business in the usual manner and with the right to do everything exactly

as it could have done before it was put under the management of the commission. The statute in question puts no limitation whatever on the term 'going concern.' " We have cited with approval and followed this decision since *Svoboda v. Snyder State Bank,* 117 Neb. 431, was decided. The legislature created the guaranty fund commission for the purpose of protecting and safeguarding the depositors' guaranty fund. The commission was given the power to determine whether an attempt should be made to restore a bank to solvency or whether it should be liquidated. In the determination, the commission performed a quasi judicial duty. The commission had three months, unhampered, to make this decision; after that, the plaintiff in this case, or any interested party, could have terminated the control of the commission by court action. There is no evidence that the plaintiff ever availed itself of this remedy. In fact, the inference may well be drawn that the plaintiff was well content to continue the plan until in time it was demonstrated that the bank could not be restored to solvency. There is no evidence that the defendants' acts were prompted by wilfulness, malice or corruption. The scheme whereby the guaranty fund commission was to operate insolvent banks as going concerns was devised, as stated in the law, for protecting and safeguarding the depositors' guaranty fund. The commission operated this bank at a time when bankers, depositors, and these defendants were still of the opinion that the fund could still pay all claims of depositors in full. The guaranty fund commission was a part of the general scheme of protecting bank deposits by a guaranty fund and when said fund became depleted and hopelessly unable to function the commission could not perform the impossible. Possibly, if the effects could have been foreseen, the judgment of the commission would have been different. However, it was not seriously challenged at the time, and no depositor availed himself of the remedy provided by section 4, ch. 30, Laws 1925, by invoking the

power of the district court to secure an order requiring the commission to close said bank and liquidate the same as provided by law. It is a fair inference, we believe, that the depositors, including the plaintiff, relied, not upon the solvency of the bank, not upon the ability of the commission to restore it to solvency, but rather upon the depositors' guaranty fund to pay their claims. Their mistake of judgment was the same mistake as that of the defendants.

The bank was not operated in violation of law. It was open for business and all the money withdrawn and transactions of the bank were in the usual and ordinary course of banking business. The deposits shrunk, it is true, but it is equally true of all banks during this period. It is also true that some depositors withdrew their deposits. But the bank was open for business, and depositors had a right to such withdrawals. Looking backward, with the benefit of subsequent experience, one may say that the loss might have been less had the bank been liquidated at once. But it is doubtful if the plaintiff, its attorneys, or any depositor thought so at the time. The guaranty fund commission did not think so.

But are the defendants liable for an honest mistake of judgment? They were public officers, and, as such, not liable for mistakes of law or of fact while acting in good faith. The general rule is stated in 22 R. C. L. 485, sec. 163, as follows: "Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption. This immunity from civil liability for a mistake in judgment extends to errors in the determination both of law and of fact. Therefore where the question of his liability is in-

volved; it is not material whether he used reasonable care in ascertaining the facts on which his judgment was founded. As regards errors of law he is equally protected when he adopts a mistaken construction of an act of congress or a state statute, or when he misunderstands the common law."

The trial court filed an able opinion in this case, to which we are indebted for a careful and helpful analysis of the case. After careful and painstaking consideration, we reach the same conclusion. It is, therefore, ordered that the appeal be dismissed.

APPEAL DISMISSED.