A. E. TORGESON, RECEIVER, APPELLEE, V. DEPARTMENT OF TRADE AND COMMERCE, APPELLANT.

FILED MAY 10, 1934. No. 29012.

*Paul F. Good, Attorney General,* and *Edwin Vail,* for appellant.

*Butler & James* and *Neighbors & Coulter, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MEYER, District Judge.

EBERLY, J.
This is a suit in equity by A. E. Torgeson, a receiver

of the Bridgeport Bank, to recover certain moneys alleged to be a trust fund in the possession of the department of banking, formerly the department of trade and commerce, of the state of Nebraska. In the district court judgment was entered for plaintiff, and defendant appeals.

The facts giving rise to the controversy include the following: On May 15, 1925, under the provisions of section 11, ch. 191, Laws 1923, as amended by section 1, ch. 30, Laws 1925, the department of trade and commerce entered into possession of the Bridgeport Bank, a state banking institution. The property and business of this bank were then placed in the charge of the guaranty fund commission, which thereupon took charge and control of the property and business of such bank, opened it, and thereafter managed it "as a going concern, without regard to its solvency." Laws 1925, ch. 30, sec. 4. On August 29, 1927, the guaranty fund commission determined that "the bank cannot be continued as a going concern and there is no probable chance of restoring solvency;" advised the attorney general of this condition, and requested the appointment of a receiver. The attorney general, pursuant to this notification, in due time caused the necessary application to be filed in the district court for Morrill county, and on September 8, 1927, an order was entered in that court determining the corporation insolvent, appointing H. C. Peterson as receiver of this institution, and directing the liquidation thereof as provided by law. In due time H. C. Peterson as receiver was, by order of the court, succeeded by Clarence G. Bliss, and he in turn, in a similar manner, was succeeded by A. E. Torgeson, the plaintiff herein. However, it also appears that the department of trade and commerce, through the action of the guaranty fund commission in the manner provided by law, had allocated to the Bridgeport Bank, for use in conducting the affairs of that bank, the following funds from the bankers' conservation fund, to wit: In April, 1926, the sum of $10,000; in August, 1926, the sum of $12,000. These sums were thereupon

transmitted to the agent or representative of the guaranty fund commission for the purpose intended by the statute. It also appears that a new bank had been chartered at Bridgeport, Nebraska, under the name of the Bridgeport State Bank. To this new bank the guaranty fund commission sold the banking house, furniture and fixtures of the Bridgeport Bank, the corporation of which they were in charge, together with certain other assets of their trust. This sale was finally consummated on July 18, 1927. On July 19, 1927, from the proceeds of this sale the $22,000 advanced from the bankers' conservation fund was repaid.

About the time of the sale of the banking house and other assets, the agent of the guaranty fund commission refused payment of certain checks drawn by its depositors on the Bridgeport Bank, and returned unhonored certain collection letters to its correspondent banks. All this occurred immediately prior to the repayment of the $22,-000 bankers' conservation fund money to the department of trade and commerce. Plaintiff alleges in his amended petition: "That said payment was made by the officers and agents of the guaranty fund commission in good faith, but under a mistaken idea as to the proper construction of the statutory provisions applicable thereto; * * * and the use of assets and funds of said bank to repay the deposit of the bankers' conservation fund to the department of trade and commerce after payment of checks of other depositors of said bank had been refused and the operation of said bank as a going concern had ceased, was an illegal and unauthorized diversion of trust funds committed to their care." In the evidence submitted there is not the slightest trace of fraud or fraudulent concealment, and every act performed evidences a *bona fide* effort to discharge a public duty.

In passing it may be said that we are not in accord with the views of appellee, stated in his brief, on what was decided in *Morrill County v. Bliss,* 125 Neb. 97. The opinion in that case discloses that the pleading therein

challenged the lawfulness of every payment made by the guaranty fund commission out of the assets of the state bank. While not specially identified in the terms of that pleading, the repayment of the $22,000 was necessarily included as part of the cause of action as alleged. And though it is true that the issues involved in that case embraced elements not present in the instant one, one of the defenses which was sustained both in the district court and in this court on appeal was that of a full compliance by this commission and its agents with the requirements of the statute during the entire transaction there in suit. On the consideration of this defense, Day, J., after a review of the statute applicable, states his conclusion as follows: "The bank was not operated in violation of law. It was open for business and all the money withdrawn and transactions of the bank were in the usual and ordinary course of banking business. The deposits shrunk, it is true, but it is equally true of all banks during this period. It is also true that some depositors withdrew their deposits. But the bank was open for business, and depositors had a right to such withdrawals. Looking backward, with the benefit of subsequent experience, one may say that the loss might have been less had the bank been liquidated at once. But it is doubtful if the plaintiff, its attorneys, or any depositor thought so at the time. The guaranty fund commission did not think so."

The plaintiff in the instant case was made a party defendant in *Morrill County v. Bliss, supra,* in his capacity as receiver of this bank. The judgment in that case is not pleaded in the present litigation, so that we may refer to the opinion only as a precedent, but not to be treated necessarily as the law of the case.

Limited to a consideration of the present record the writer hereof is impressed with the view that the repayment of the $22,000 to the secretary of the department of trade and commerce, when and as made, is probably amply justified. However, in law and fact, the point,

not being necessary for the disposition of this case, need not be determined. We are, however, satisfied with and approve the general conclusions as to the powers and duties of the guaranty fund commission as set forth in the opinion in *Morrill County v. Bliss, supra.*

By the law in force during the period covered by the transaction in suit, upon a proper certificate of the guaranty fund commission, the department of trade and commerce was authorized to levy an assessment on state banks, the fund resulting being denominated by statute as the "Bankers' Conservation Fund." This statute also provided that this fund shall at all times "belong to the banks contributing thereto." Laws 1923, ch. 191, sec. 25. Its purpose, as expressly declared, was to prevent the closing of banks and to promote the conserving of the depositors' guaranty fund. Where a definite sum thereof was allocated to a bank, the statute expressly directed that such sum should be transmitted by the department of trade and commerce to the agent or representative of the guaranty fund commission in charge of such bank, to be used by him as a deposit, and for no other purpose, but in addition its exclusive use was to be applied under the control and direction of the guaranty fund commission in conducting the affairs of such beneficiary bank, which was necessarily one that had been taken over by said commission, and as to which it was exercising its vested powers to open and manage it as a going concern, without regard to solvency. Laws 1923, ch. 191, sec. 18, as amended. In this manner there was placed at the service of the agent or representative of the guaranty fund commission in charge of this institution a trust fund by means of which lacking cash was supplied and the corporate existence of the bank as a continuing institution was assured.

For, "The taking over of the assets of a banking corporation by the department of trade and commerce of this state for the purpose of managing or liquidating such bank does not effect a dissolution of the corporation.

"In such case, the corporation retains its corporate entity and is subject to suit upon its contracts, with this qualification, that by such suits it is not sought to interfere with the possession of the assets of .the bank or the distribution thereof." *Svoboda v. Snyder State Bank,* 117 Neb. 431.

It is quite apparent that all of the provisions of our banking act, in force at the time of the occurrences involved in this litigation, when construed together, fairly evidence a legislative intent that that portion of the bankers' conservation fund provided for the use of the agent of the guaranty fund commission in conducting the affairs of banks in its possession should be ultimately repaid to the secretary of the department of trade and commerce for the owners whose private property it was. Further, it must be admitted that by the fair intendment of the words employed by the legislature, as well as by the executive construction of the same, the fund created for this purpose was a "revolving fund" for use in connection with each institution only so long as the purpose of its creation was subserved, and when circumstances negatived this result it was to be returned for the same use elsewhere.

No legislative intent is to be found expressed to the effect that the bankers' conservation fund was merely a security to the depositors in the same manner as the guaranty fund was regarded. It was rather the theory of the enactment that a bank in straitened circumstances, and even though temporarily insolvent, aided by the use of the bankers' conservation fund, would be enabled to discharge its pressing obligations with excellent possibilities of being restored to solvency. Even if restoration to solvency should prove in the end impracticable, still, contributed funds having been used in settling its obligations, the repayment of the funds contributed from its assets would leave it in no worse position. In principle, while termed a "deposit," in connection with the representative of the commission it was a deposit for a highly

special purpose and possessed many if not all of the elements of a trust fund, when considered in the light of the limited use to which it was restricted. "A deposit of money in a bank under a contract or understanding that it shall be held and used for a special purpose is a specific deposit." *State v. American State Bank,* 126 Neb. 34. See, also, *State v. State Bank of Touhy,* 122 Neb. 582; *State v. Citizens State Bank,* 124 Neb. 562.

In this connection it may be said that sections 28 and 29, ch. 191, Laws 1923, are special provisions applicable only to cases where lawful purchases of the assets and capital stock of such bank shall have been secured by the governmental agencies and a sale of the bank and its assets thus made *en masse.* That situation did not arise in the instant case.

This action is based on an alleged "deposit." If insolvent, as plaintiff alleges, the Bridgeport Bank had no power to receive it (Comp. St. 1929, sec. 8-147), and it received it, if at all, not by virtue of its corporate powers, but because of the act of the agent of the guaranty fund commission. It was used by this governmental agency for its benefit and the benefit of its creditors, in conducting the business of the bank as a going concern, so long as there remained any hope of a corporate reviver or attaining the purpose for which this fund was created. Indeed, the plaintiff charges that such use was unnecessarily prolonged. This suit by the corporation's receiver is for the recovery of the amount repaid on a "deposit," made for a special purpose, after that purpose had been fully performed. In its then condition of insolvency this corporation at the time it received the benefits of these moneys, which it now terms a deposit, was in its own capacity precluded from receiving a "deposit" for any purpose whatever. Now, after it has had the benefits of this $22,000 without charge, in excess of the period permitted by law (as it now alleges), and when its position of insolvency has not been adversely affected by this repayment made, it seeks recovery of the same, the

result of which, if successful, will be that, to the extent of the recovery permitted, the public policy evidenced by the law creating the bankers' conservation fund will be utterly defeated. Truly, the situation here presented invokes the application of the ancient maxim, viz., *"Jus ex injuria non oritur."*

All parties concede that, if applicable, our statute of limitations requires this action to be instituted within four years after the cause of action accrued. This action was commenced on January 11, 1932. The moneys of the bankers' conservation fund were repaid July 19, 1927. Appellee contends that the rule is that possession of the fund by the department of trade and commerce is precarious and not *animo domini,* and being trustee it cannot acquire the trust by lapse of time. The answer is that the bankers' conservation fund is owned by the contributing banks. It is private property subject to a statutory use. The possession of the department of trade and commerce is the possession of the ultimate private owners, and is therefore *animo domini* and not precarious.

Appellee also contends that the receiver appointed, H. C. Peterson, was a member of the guaranty fund commission and remained a member of that commission until April 30, 1929, when the same was abolished by the legislature; that the guaranty fund commission caused these payments to be made to the department of trade and commerce before his appointment as receiver; and that therefore the statute of limitations will not commence to run until the control of this trustee over the affairs of the bank has ceased and an independent and disinterested representative of the *cestui que trust* comes into the affairs of the bank. But, as the payment of the $22,000 was not in fact made by H. C. Peterson in person, he had no financial interest whatever involved in the transaction. No fraud or concealment is alleged on the part of any one. The contrary is conceded. Besides, this court is committed to the view that, "In a cause properly before a court of equity for determination, the appointment of a necessary receiver is a ju-

dicial function which cannot be exercised or controlled by the governor or the legislature." *State v. State Bank of Minatare*, 123 Neb. 109.

In all respects we must consider the receiver, appointed on September 8, 1927, solely as an officer of the court appointing him, and subject to its absolute control. He was in fact the hand of the court. The court was at all times open to any complaining creditors. So, too, the action in this case is not brought against the guaranty fund commission or any of the members thereof in that capacity. This action is prosecuted solely against the department of trade and commerce. When the repayment of the $22,000 was made, so far as the members of the commission were concerned, it was a closed transaction. As to it their official duties were completed, and they at no time had any financial or personal interest involved. After the appointment of Peterson as receiver on September 8, 1927, no adverse interest of any kind existed so far as the discharge of his duties as receiver was concerned. The reasons which furnish the basis of the cases cited by plaintiff in support of his contention on this point are wholly absent in the instant case.

As to the necessity of actual notice to, or knowledge by, the receivers, for which plaintiff apparently contends, it may be said that his pleadings contain no allegations which in substance and legal effect negative contemporaneous notice or knowledge of the several receivers of this institution, and of all parties in interest, of the fact of the advancement of the sum of $22,000 to this bank, and of the dates on which made, as well as of the fact of the repayment thereof on the date when made. No facts thus appear in the record as established which would prevent or toll the running of the statute of limitations.

Furthermore, the evidence preserved in this bill of exceptions supports the conclusion that books of account of the bank, while in the charge of the guaranty fund commission, were properly kept, and fully and fairly disclosed the repayment of the $22,000. These records were in the

lawful possession or control of all of the receivers and subject to their inspection, and, indeed, of all parties in interest. On this subject of right of inspection the applicable rule is:

"The books and accounts of the receiver and all other papers in or upon which appears anything pertaining to the trust or his administration thereof are quasi-public in character and so open to examination not only by the court but by all persons interested in the estate, subject to the qualification that the time and manner of such examination may not be such as to interrupt the business of the receiver or prevent resort to the books and accounts by other interested persons." 53 C. J. 172.

This language would also define the rights of stockholders and directors of the old institution during the period when control was exercised by the guaranty fund commission.

It necessarily follows that the defense of the statute of limitations in the instant case is one of the "defenses which might have been made against the party over whose property the receiver is appointed, or whose title to sue and whose interests are represented by the receiver, may be interposed as against him. So a receiver of a corporation takes its assets subject to the conditions and legal disabilities with which they were trammeled in the hands of the corporation and causes of action in the right of a corporation are subject to the defenses which might have been available against it."· 53 C. J. 329.

It follows that the cause of action set forth in the petition is barred, and the district court erred in sustaining the same and in its entry of judgment thereon.

The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.